THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN CROWE, Defendant-Appellant.

First District (1st Division) Nos. 1—99—0419, 1—99—0955 cons.

Opinion filed February 11, 2002.—Rehearing denied March 20, 2002.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Margaret J. Campos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a bench trial, defendant, John Crowe, was found guilty of first degree murder and sentenced to 50 years' imprisonment. On appeal, defendant contends the trial court erred in granting the State's motion to disqualify defense counsel, thereby depriving defendant of his sixth amendment right to counsel of choice. This court has jurisdiction pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603). For the reasons set forth below, we reverse and remand for a new trial.

## Background

On January 28, 1998, defendant, John Crowe, his brother, Stephen Crowe, Carlos Sanchez, Shane Masini, and Michael Rivera were charged by indictment with first degree murder in the shooting death of Marcus Lee. Defendant and Stephen Crowe were to be tried jointly and retained Edward Edens (Edens) as their counsel. On July 6, 1998, after several continuances, the trial court set a trial date of August 10, 1998. On August 10, 1998, however, the day trial was set to begin, the State presented a motion to disqualify Edens as defense counsel. The State maintained there was a potential conflict of interest, in violation of Rule 3.7 of the Illinois Rules of Professional Conduct, because Edens could be called by the State to testify as a rebuttal witness against his

clients.[1] Specifically, the State proffered that on January 20, 1998, Edens came to the Area Three police station and spoke to two police officers, Detectives Schorsch and Aiken, and related to them certain information he obtained from his clients, the Crowe brothers. The State represented that the information purportedly related by Edens, and memorialized in a police report, was as follows.

Late in the evening on January 9, 1998, defendant and Stephen Crowe went to a party on Laramie Street. Several persons were present whom defendant and Stephen knew by the nicknames of Wolfie, Ice Mike, Joker and Little Suzie. At approximately 3 a.m., defendant and Stephen left the party in a van driven by Wolfie. Wolfie sat in the driver's seat, Little Suzie sat in the front middle seat, and Ice Mike sat in the front passenger seat, while defendant, Stephen and Joker sat in the backseat. Wolfie drove to the Lathrop housing project, stopped the van suddenly, and Ice Mike jumped out. Stephen and defendant heard several gunshots after which Ice Mike returned to the van. Wolfie drove away and eventually left Stephen and defendant in an alley near Belmont and Leavitt Streets. Stephen and defendant met a friend known as "Dice," which was also Stephen's nickname, who drove defendant and Stephen back to the party.

The State proffered that after relating this information, Edens informed the detectives that his clients were afraid to come forward to the police and state what they knew about the incident because they feared gang retaliation. Edens informed the detectives that he would attempt to locate defendant and Stephen Crowe and bring them to the police station.

In response to the State's proffer, Edens proffered that the detectives with whom he spoke on January 28, 1998, were mistaken as to who had given him the information he related to them. Edens stated that he told the detectives only that he obtained the information from a client. Edens speculated that the detectives mistakenly assumed John and Stephen Crowe were the clients to whom he was referring and their police report reflected this mistaken assumption. Edens stated, in actuality, at the time he spoke with the detectives he had not yet been retained by or spoken to defendant or Stephen Crowe.

---

[1]Rule 3.7(b) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 3.7 (b)) provides in pertinent part:

> "If a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of the client, the lawyer may accept or continue the representation until the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client."

Rather, the manner in which Edens came to possess the information he related to the detectives was as follows.

On January 28, 1998, Israel Jobert, a client whom Edens represented in an unrelated matter, called Edens regarding the possibility of representing the Crowe brothers. Edens told Mr. Jobert that he needed more information about the case and agreed to meet at a nearby tavern. At the tavern, Edens was met by Stephen Crowe's wife and several other individuals who were members of an association to which defendant and Stephen Crowe also belonged. It was these individuals, not the Crowe brothers, who related the information which Edens later related to the police. Edens stated that at the time he spoke with the detectives, he had neither seen nor met with defendant or Stephen Crowe and was not sure how to locate either of them.

Following Edens' proffer, the trial judge commented that even assuming for purposes of argument that Edens' version of events was true, the State still would not be precluded from calling Edens as a rebuttal witness in the event the Crowes elected to testify, in which case it would be a question for the trier of fact to determine credibility, whether or not Edens made the statement, and under what circumstances the statement was made. The court further commented that the potential conflict was a serious concern, in view of the nature and the gravity of the charges against the defendants. Edens responded that the likelihood of an actual conflict arising was remote, in that his clients from the inception of the case indicated they did not intend to testify. Edens further noted that while his clients were aware of the potential conflict, they strongly desired that he remain as their counsel. For purposes of clarification, the court determined to hold an evidentiary hearing and allow the testimony and cross-examination of the detectives with whom Edens spoke on January 28, 1998.

At the hearing, Detective Schorsch testified on behalf of the State. Detective Schorsch stated that on January 20, 1998, he, Detective Labee, Detective Aiken, and Detective Gorski were assigned to investigate the shooting death of Marcus Lee. At approximately 3:20 p.m., Edens arrived at the Area Three police station and asked the detectives if they were looking for John and Stephen Crowe in relation to the Lathrop Housing Project homicide. Detective Schorsch informed Edens that defendant and Stephen Crowe were wanted for questioning in connection with the homicide. Edens informed Detective Schorsch that he had spoken to John and Stephen Crowe, and related to him the information as previously proffered by the State. Detective Schorsch testified that Edens specifically stated he obtained this information from speaking with his clients, defendant and Stephen Crowe. Detective Schorsch further stated that his conversation with Edens

lasted about 5 to 10 minutes, and that in his 25 years as a police officer, he had never known an attorney to come forward to the police to relate information confided to him by a client.

On cross-examination, Detective Schorsch denied that Edens told him simply that he had obtained the information from a "client." Rather, Detective Schorsch maintained that Edens specifically stated that he obtained the information from speaking with defendant and Stephen Crowe. Detective Schorsch agreed that Edens told him he would try to locate defendant and Stephen Crowe. Detective Schorsch denied that Edens qualified his statements to police by stating that he believed his rendition of events would be consistent with what defendant and Stephen would tell the police if they were located and came forward. Detective Schorsch stated he believed that Edens had contact with defendant and Stephen Crowe, prior to speaking to the detectives, because Edens specifically stated that he obtained the information from speaking with defendant and Stephen Crowe.

At the close of the hearing, the State argued that although the Crowe brothers indicated they would not testify at trial, they could change their minds and testify, in which case Edens could be called as a rebuttal witness by the State. Edens submitted that his clients were aware of the potential conflict but had great confidence in his ability to represent them and desired to retain him as their counsel in spite of the potential conflict. Edens further argued that the probability that his clients would testify at trial was extremely remote and, in any event, it would be unnecessary for the State to call him as a witness, as the State could call the individuals with whom Edens spoke at the tavern to testify in his stead. Edens also represented that in the event his clients decided to testify, he would have another attorney take over the case at that point, and that he knew a prospective cocounsel who was familiar with the case who was prepared to do so. Edens resubmitted that the information he related to the detectives was not obtained from his clients, the Crowe brothers, but from other persons.

Based on the arguments and evidence presented, the trial court concluded "there was a conversation," the nature and extent of which the trier of fact would have to determine. The court held that because Edens could be called to testify against his clients if they elected to testify, he could not serve as defense counsel and was subject to disqualification. Defendant and Stephen Crowe thereafter retained new counsel, and on October 14, 1998, a joint bench trial commenced. Defendant ultimately was found guilty of first degree murder under an accountability theory and sentenced to 50 years' imprisonment, while Stephen Crowe was acquitted of all charges.

## Discussion

Defendant contends the trial court erred in granting the motion to disqualify Edens, thereby denying him of his sixth amendment right to counsel of choice. Specifically, defendant maintains the court's ruling was error, as it was premised on the erroneous legal conclusion that Edens' testimony would have been admissible, when in fact such testimony would have been inadmissible hearsay or barred under the attorney-client privilege. Defendant further contends the trial court's decision should be reviewed *de novo*, rather than for an abuse of discretion, because whether disqualification was warranted hinged upon whether Edens' testimony would have been admissible, a purely legal question. In addition, defendant maintains numerous other factors militated against disqualification, including: (1) the untimeliness of the State's motion; (2) the remoteness of the possibility of Edens being called to testify; (3) the availability of measures less drastic than disqualification to protect defendant and the integrity of the judicial process; and (4) defendant's willingness to waive the right to conflict-free representation.

Before addressing the merits of defendant's assertions, we believe a review of the general principles governing the right to counsel of choice is instructive to an understanding of this case.

■ The sixth amendment right to assistance of counsel (U.S. Const., amend. VI) encompasses both the right to effective representation by competent counsel and the right to select and be represented by one's chosen attorney. *People v. Howery*, 178 Ill. 2d 1, 49 (1997); *People v. Holmes*, 141 Ill. 2d 204, 217 (1990). The right to choose one's own counsel is not absolute, however, but is circumscribed in several important respects, which may include the disqualification of chosen counsel if an actual conflict of interest exists or a serious potential for conflict exists. *Holmes*, 141 Ill. 2d at 217-18, citing *Wheat v. United States*, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 148, 108 S. Ct. 1692, 1697 (1988). Ordinarily, an accused may exercise the right to counsel of choice, even where it jeopardizes the accused's right to effective assistance of counsel, if the accused makes a knowing, voluntary, and intelligent waiver of the latter right. *Holmes*, 141 Ill. 2d at 218. Nevertheless, a trial court has substantial latitude to refuse such waiver not only where an actual conflict exists, but also where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses. *Holmes*, 141 Ill. 2d at 223, citing *Wheat*, 486 U.S. at 163, 100 L. Ed. 2d at 151, 108 S. Ct. at 1699.

■ While the sixth amendment includes the right of an accused to select his attorney, the essential aim of the amendment is to "guarantee an effective advocate for each criminal defendant rather

than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159, 100 L. Ed. 2d at 148, 108 S. Ct. at 1697. Balanced against an accused's right to choose his own attorney, courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that their judgments remain intact on appeal and to avoid even the appearance of impropriety in the legal proceedings before them. *People v. Barrow*, 133 Ill. 2d 226, 253 (1989); *People v. Troutt*, 172 Ill. App. 3d 668, 671 (1988). Although courts must recognize a presumption in favor of petitioner's counsel of choice, the trial court is in the best position to weigh and evaluate the facts and circumstances and to weigh the interests in the particular case to determine if disqualification is indicated. *Holmes*, 141 Ill. 2d at 223, citing *Wheat*, 486 U.S. at 164, 100 L. Ed. 2d at 152, 108 S. Ct. at 1700. Accordingly, a trial court's decision to deny a defendant's counsel of choice will not be disturbed on review absent a clear abuse of discretion. *Holmes*, 141 Ill. 2d at 223.

With these principles in mind, we turn to the arguments presented.

The first issue raised on appeal concerns the appropriate standard of review. Here, the State, citing the Illinois Supreme Court's decision in *Holmes*, maintains that the trial court's decision to disqualify Edens must be reviewed for abuse of discretion. Defendant, in turn, acknowledges that a trial court's decision to disqualify counsel is ordinarily reviewed for abuse of discretion. However, defendant maintains that under the particular circumstances of this case *de novo* review is appropriate because here the trial court's exercise of discretion hinged upon the erroneous legal conclusion that Edens' testimony would have been admissible.

■ Even accepting defendant's position that the trial court's decision regarding disqualification hinged upon the determination regarding admissibility, we note that decisions regarding the admissibility of evidence, like decisions regarding the disqualification of counsel, are also reviewed for an abuse of discretion. *People·v. Jones*, 306 Ill. App. 3d 793, 799 (1999). Only when no fact or credibility issues are involved is *de novo* review appropriate. *People v. Dilworth*, 169 Ill. 2d 195, 201 (1996). When reviewing a trial court's evidentiary rulings, a reviewing court employs a *de novo* standard of review in only limited instances. *People v. Caffey*, 205 Ill. 2d 52 (2001). For example, a trial court's decision that a statement is hearsay may be reviewed *de novo* when that determination does not involve fact finding or weighing the credibility of the witnesses. *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994). Thus, the exception to the general rule of deference on issues of admissibility will apply only in cases where "a trial court's exercise of discre-

tion has been frustrated by an erroneous rule of law." *People v. Williams*, 188 Ill. 2d 365, 369 (1999).

In this case, the record indicates the trial court determined to disqualify Edens based on its determination that Edens could be called to testify as a rebuttal witness if defendant elected to testify. The trial court did not make a factual finding as to whether it found Edens' version of events to be true, that is, that the information he related to the detectives came from conversations with persons other than defendant, as opposed to Detective Schorsch's version of events, that is, that Edens obtained the information from conversations with defendant. At the close of the disqualification hearing, the court concluded only, "there was a conversation." The court reasoned that disqualification was necessary, however, because even assuming Edens' version of events to be true, the State could still call Edens to testify as a rebuttal witness if defendant elected to testify.

We agree with defendant that this determination was in error. Whether applying a *de novo* or an abuse of discretion standard, we reach the same conclusion. Assuming Edens' version of events to be true, his testimony could not have been admitted. Even if defendant had determined to testify at trial and testified inconsistently with the version of events related by Edens to the police, Edens could not be called as a rebuttal witness by the State to testify to facts related to him by persons other than defendant. Such testimony would clearly constitute inadmissible hearsay.

■ ■ Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted therein and dependent for its value on the credibility of the out-of-court declarant. *People v. Sims*, 285 Ill. App. 3d 598, 608 (1996). The fundamental basis for excluding such a statement is the lack of an opportunity to test the credibility of the statement through cross-examination. *People v. Rodriguez*, 312 Ill. App. 3d 920, 928 (2000). Section 115—10.1 of the Code of Criminal Procedure of 1963 (the Code) creates a statutory hearsay exception for prior inconsistent statements of a witness in a criminal case under certain circumstances (725 ILCS 5/115—10.1 (West 1998)). That section provides that a prior inconsistent statement is not made inadmissible by the hearsay rule if (1) the statement is inconsistent with the witness' testimony at trial; (2) the witness is subject to cross-examination concerning the statement; (3) the statement describes an event of which the witness had personal knowledge; and (4) the statement is proved to have been accurately recorded (725 ILCS 5/115—10.1 (West 1998)). Even if a prior inconsistent statement does not meet the standard set forth in section 115—10.1 of the Code, however,

it still may be used for impeachment (725 ILCS 5/115—10.1 (West 1996) (last paragraph)). To be admissible as impeachment the statement must truly be inconsistent with the trial testimony and must deal with a matter that is more than collateral. *People v. Wilson*, 302 Ill. App. 3d 499, 511 (1998). Further, before a prior inconsistent statement may be admitted, a proper foundation must be laid. *Wilson*, 302 Ill. App. 3d at 511.

■ Here, assuming Edens' version of events to be true, his testimony regarding statements made to him by persons other than defendant concerning information purportedly related to those persons by defendant would constitute double hearsay. It would not qualify as substantive evidence of a prior inconsistent statement, an exception to the hearsay rule, or as competent evidence to impeach defendant's testimony. Although defendant additionally contends, even assuming Detective Schorsch's version of events to be true, Edens' testimony still would have been barred by the attorney-client privilege, we need not reach this issue. Again, we observe the trial court made no determination as to whether it found Edens' narrative, as opposed to Detective Schorsch's narrative, to be more credible. Rather, the trial court reasoned that disqualification was necessary because, under either scenario, Edens still could be called to testify on rebuttal if defendant elected to testify. The court's decision to disqualify Edens was an abuse of discretion, however, as it was founded on the erroneous assumption that Edens could be called to testify on rebuttal to information conferred by persons other than defendant. Consequently, defendant's sixth amendment right to counsel of choice has been thwarted, and the cause must be reversed and remanded for a new trial. Because we find reversal is warranted on these limited grounds, we do not address defendant's remaining arguments.

Reversed and remanded.

McNULTY and COUSINS, JJ., concur.