AUDREY CHAPMAN *et al.*, Plaintiffs-Appellants, v. HUBBARD WOODS MOTORS, INC., Defendant (S and G Design, Inc., d/b/a Ruthie's Glencoe Flowers, Inc., *et al.*, Defendants-Appellees).

First District (3rd Division)   No. 1—02—0796

Opinion filed June 9, 2004.—Rehearing denied July 12, 2004.

Theodore G. Karavidas and Ann L. Berdahl, both of Karavidas Law Offices, of Chicago, for appellants.

Franklin U. Valderrama, of Sanchez & Daniels, of Chicago, for appellees.

JUSTICE HALL delivered the opinion of the court:

The plaintiffs, Audrey Chapman and Clifford C. Chapman, filed a lawsuit against the defendants, S&G Design Corporation and Oscar O. Guzman, seeking damages for injuries suffered by Audrey that were allegedly caused by a truck owned by S&G. Following a jury trial, the plaintiffs were awarded $3,048 for medical expenses.[1] The jury made no award for pain and suffering. The trial court denied the plaintiffs' motion for a new trial, and the plaintiffs appeal.

---

[1]The verdict in this case was returned only against S&G Design Corporation. However, an appellee's brief in this case was filed on behalf of both S&G Design Corporation and Oscar Guzman.

On appeal, the plaintiffs raise the following issues: whether the trial judge's erroneous evidentiary rulings denied them a fair trial and whether the jury's verdict was against the manifest weight of the evidence.

At the outset, we note that, prior to the commencement of the trial in this case, the defendants admitted negligence. However, the defendants did not admit that any act or omission on their part was the proximate cause of Audrey's injuries. The evidence pertinent to the issues raised on appeal is summarized below.

Audrey testified as follows.

On December 16, 1994, Audrey was at Hubbard Woods Motors waiting to have the battery in her car changed. She was seated on a bench located against a window. There were some tires stacked against the window on the outside of the building. While seated, Audrey was knocked off the bench, which struck her back. She ended up on the floor. Turning to see what had knocked her off the bench, she observed a large shard of glass separating from the window. Audrey also observed tires in the showroom and that a corner of a van was through the glass. The bench she was sitting on was jutting out into the middle of the room.

When the paramedics arrived, Audrey told them that her back and neck hurt. The paramedics put a collar on her neck and took her to Highland Park Hospital.

At the emergency room, Audrey was examined and X rays were taken. The emergency room doctor prescribed a muscle relaxant, and she was discharged from the hospital that evening. The next day, she had a large bruise on her arm.

On December 18, 1994, because the pain had increased, Audrey contacted her regular physician, Dr. Weiner, who prescribed pain medication. Approximately a week later, Audrey again contacted Dr. Weiner, telling him that the pain was not going away. Dr. Weiner sent Audrey for physical therapy.

After five or six weeks, the physical therapy was not working. On the recommendation of a friend, Audrey saw Dr. Mardjetko, an orthopedic surgeon. After Dr. Mardjetko examined her, he referred her to Dr. Reddy, who gave her an injection in her left hip. However, the injection increased the pain. Dr. Reddy referred her back to Dr. Mardjetko, who sent her for physical therapy. However, the physical therapy made her feel worse.

On the recommendation of her attorney, Audrey was examined by Dr. Young. At that time, she was experiencing pain in her neck, shoulders and back. Dr. Young recommended different types of corsets and prescribed exercises and medication. Dr. Young also gave her

acupuncture treatments in her back and shoulders, which gave her instant, albeit not lasting, relief.

In late October or early November 1995, Audrey went to the emergency room complaining of stomach problems. Dr. Weiner referred her to Dr. Ingalls, who prescribed medications for her stomach and performed a procedure at the hospital on her to try to determine the source of the problem.

In November 1995, on the recommendation of a friend, Audrey saw Dr. Reynolds, a chiropractor. She complained of pain in her stomach, shoulders, and back, particularly the lower back. Dr. Reynolds treated her until 1998.

After reading an article about holistic medicine, Audrey went to see Dr. Filice, a holistic doctor. Dr. Filice gave her natural vitamins and supplements. He also gave her a prescription for Cytomel, a thyroid drug. Audrey denied that she was having any problem with her thyroid at that time.

In 1997, Dr. Young referred Audrey to Dr. Rothke, a psychologist. After the initial visit, she did not see Dr. Rothke for a year. On her second visit, Dr. Rothke administered some written tests and referred Audrey to the Rehabilitation Institute of Chicago (RIC).

In January 1998, Audrey attended RIC for pain therapy for four weeks. At RIC, she was treated by Dr. Harden and Dr. Cole, who was a psychologist. Audrey learned to work around her pain and to keep her anxiety level down.

After her discharge from RIC, Audrey was treated by Drs. Young, Weiner, and Rothke.

In 2000, after being rechecked by Dr. Harden, she was seen by Dr. Pliskin, who gave her written tests and talked to her. She last saw Drs. Young and Rothke in January 2001.

Audrey acknowledged that, prior to the 1994 accident, she had been treated by Dr. Rana, a chiropractor, after she injured her shoulder bowling. She saw Dr. Rana between 1980 and 1990. Since her pain continued, Dr. Rana recommended that she see a medical doctor. Although her pain was almost gone at that point, she saw Dr. Spencer in 1990. Dr. Spenser recommended rest.

Prior to 1994, Audrey suffered from headaches and sinus problems. After she was treated for allergies, her symptoms were greatly alleviated.

In 1990, Dr. Weiner referred Audrey to Dr. Mary Moran, a rheumatologist, for treatment of rotator cuff tendonitis. Dr. Moran gave her medication for her tendonitis and treated her for a back problem. After seeing Dr. Moran, her neck, back and shoulders felt fine.

None of the doctors Audrey saw diagnosed her with fibromyalgia. When she was admitted to RIC, the diagnosis was myofascial pain syndrome. When she was released from RIC, she was diagnosed as having posttrauma disorder syndrome and depression. Prior to December 16, 1994, she had never been diagnosed or treated for posttraumatic stress syndrome or had any kind of psychological or psychiatric counseling.

Audrey's relationship with Clifford, her husband, and her children was negatively impacted by her condition following the December 16, 1994, accident. However, the relationships improved after her treatment at RIC. The accident negatively impacted her sleep patterns, and she suffered from nightmares. The nightmares have lessened over time.

After the accident, Audrey had less energy. She could no longer participate in social activities with her husband. She became paralyzed with fear when a window shook and when, on one occasion, someone knocked a wineglass against a microphone to make a point. She could no longer concentrate to work at her advertising speciality job. It was difficult to do housework, but RIC taught her how to perform certain tasks.

According to Audrey, the pain she experienced after the accident was quite different from the pain she had suffered prior to the accident. The pain after the accident was constant, not episodic. She continued to feel pain in her lower back every day. She could sometimes go two hours without feeling pain.

On cross-examination, Audrey testified as follows.

Audrey acknowledged that, prior to 1994, she had been experiencing back pain and pain in her left shoulder and that she had been experiencing neck pain for 20 years prior to the accident. She also acknowledged that she had difficulties sleeping prior to the 1994 accident. In 1990, Dr. Rana treated Audrey for lower back pain.

Regarding the accident, Audrey was seated on the bench closest to where the tires were found. She denied sitting on the other bench in the lobby. She received the bruise to her left arm as a result of the accident, but she did not remember how she sustained the bruise. She was not treated for any cuts or lacerations at the hospital.

In her conversations with Dr. Weiner following the accident, Audrey never told him that she had left shoulder pain or that she was feeling stressed or anxious. She never saw Dr. Weiner for treatment of her injuries. Audrey never told Dr. Young about her stress or nightmares because he would have observed that she was stressed. She treated with Dr. Young in 1995 and at the beginning of 1996. However, she did not see him again until July 1996, when she was

having lower back pain from picking up her grandchild. That pain exacerbated the pain she suffered from the 1994 accident.

Linda Montgomery testified as follows.

On December 16, 1994, Linda was employed as a receptionist at Hubbard Woods Motors. Linda worked at a counter. There was a bench across the front of the lobby and a bench on the side of the lobby. Prior to the accident, Linda was behind the counter, and Audrey was seated on the bench to Linda's left. Linda had an unobstructed view of Audrey. When the van went through the window, the bench that was in front of the window moved. The bench that Audrey was seated on did not move during the accident.

After the accident, Linda went over to Audrey to see if she was all right. Audrey was not on the floor, and she was not screaming or hysterical. Linda did not observe that Audrey was bleeding or was bruised. Prior to the accident, Audrey had not been seated on the bench along the window. Linda never observed any object strike Audrey.

After the trial court refused to allow the plaintiffs' attorney to question Linda as to her relationship with the owner of Hubbard Woods Motors, the plaintiff's attorney made the following offer of proof.

Linda acknowledged that at the time of the accident, Bob Berger, the owner of Hubbard Woods Motors, was a friend of hers and that Linda socialized on a least one occasion with Mr. Berger and his wife. At the time of her deposition, Hubbard Woods Motors was still a defendant in this case. At the time of her deposition, Linda did not believe that Mr. Berger should have been sued because the accident was not his fault, and Audrey did not appear to be injured. At the time of her deposition, Linda was no longer an employee of Hubbard Woods Motors.

After the trial court denied the plaintiffs' request to call Winnetka police officer Mike Hornstein as a rebuttal witness, the plaintiffs' attorney made the following offer of proof.

On December 16, 1994, following the accident, Officer Hornstein spoke with Audrey, Linda, and Oscar Guzman, individually. Audrey told him that she was seated on the bench struck by the van. Linda also told him that the van struck the bench on which Audrey was seated. Finally, Oscar told him that he left the van unattended and that it backed through the window, hitting a bench on which a woman was seated.

The jury awarded $3,048 for Audrey's medical expenses but awarded nothing for pain and suffering. After the denial of the plaintiffs' motion for a new trial, this appeal followed.

## ANALYSIS

The plaintiffs contend that they were denied a fair trial because of the cumulative effect of the evidentiary errors committed by the trial court.

## I. Standard of Review

■ An abuse of discretion standard applies when this court reviews a trial court's evidentiary rulings. *Jackson v. Graham*, 323 Ill. App. 3d 766, 773, 753 N.E.2d 525, 531 (2001).

## II. Discussion

### A. Linda Montgomery

The plaintiffs argue that the trial court erred when it refused to allow them to cross-examine Linda regarding her bias at the time her deposition was taken. While Hubbard Woods Motors was no longer a defendant in this case at the time of the trial, the plaintiffs reason that Linda would not deviate from her deposition testimony for fear of being charged with perjury.

■ The scope of cross-examination rests within the broad discretion of the trial court. *Preston v. Simmons*, 321 Ill. App. 3d 789, 802, 747 N.E.2d 1059, 1072 (2001). One of the purposes of cross-examination is to test the credibility of the witness. *Preston*, 321 Ill. App. 3d at 802, 747 N.E.2d at 1072. Subject to the court's discretion in determining the relative value for such purpose, it is proper to allow inquiry into collateral matters revealing the past conduct of a witness which tends to impeach the witness' credibility. *Preston*, 321 Ill. App. 3d at 802-03, 747 N.E.2d at 1072. Thus, matters showing an interest, bias or motive to testify falsely by a witness may be brought out on cross-examination, even if those matters are not brought out on direct examination. *Preston*, 321 Ill. App. 3d at 802-03, 747 N.E.2d at 1072. However, for deposition testimony to be admissible for impeachment, that testimony must contradict an in-court statement of the witness on a material matter. *Preston*, 321 Ill. App. 3d at 803, 747 N.E.2d at 1072.

When the plaintiffs' attorney attempted to question Linda regarding her friendship with Mr. Berger, the defendants' attorney objected on the basis the question was beyond the scope of direct examination and on the basis of relevancy. Even though the subject of Linda's friendship with Mr. Berger was not brought out on direct examination, it would have been proper for the plaintiffs' attorney to question her about it to reveal any bias she would have had in favor of Hubbard Woods Motors.

However, once Hubbard Woods Motors was no longer a party to

this case, Linda's friendship with Mr. Berger was no longer relevant, and the trial court properly sustained the objection on that basis. Her deposition testimony therefore would not have been admissible for impeachment as it did not contradict her in-court statement on a material matter. *Preston*, 321 Ill. App. 3d at 803, 747 N.E.2d at 1072.

Moreover, assuming that Linda's deposition testimony that she was friends with Mr. Berger and that she did not feel that he should have been sued had some bearing on her credibility at trial, the probative value of this evidence was outweighed by its potential for confusing and proliferating the issues. See *Preston*, 321 Ill. App. 3d at 803, 747 N.E.2d at 1072.

We conclude that the trial court did not err in restricting the plaintiffs' cross-examination of Linda.

### B. Officer Hornstein

The plaintiffs argue that the trial court erred when it refused to allow them to call Officer Hornstein as a rebuttal witness.

■ Rebuttal evidence is admissible " 'if it tends to explain, repel, contradict or disprove the evidence of [a witness].' " *Lagestee v. Days Inn Management Co.*, 303 Ill. App. 3d 935, 942, 709 N.E.2d 270, 276 (1999), quoting *People ex rel Mendez v. Villa*, 260 Ill. App. 3d 866, 870, 632 N.E.2d 322, 324 (1994). If a defendant presents in its case in chief an affirmative matter to support its defense, the plaintiff then has the right to introduce evidence in rebuttal as to such affirmative matter. *Lagestee*, 303 Ill. App. 3d at 942, 709 N.E.2d at 276. The trial court has the discretion to admit or exclude rebuttal evidence, and a reviewing court will not disturb the trial court's decision absent an abuse of discretion. *Hoem v. Zia*, 239 Ill. App. 3d 601, 618, 606 N.E.2d 818, 830 (1992), *aff'd*, 159 Ill. 2d 193, 636 N.E.2d 479 (1994). " '[A]n abuse of discretion is likely to occur only when a party is prevented from impeaching witnesses, supporting the credibility of impeached witnesses, or responding to new points raised by the opponent.' " *Hoem*, 239 Ill. App. 3d at 618, 606 N.E.2d at 830, quoting *Barth v. Messa*, 201 Ill. App. 3d 19, 33, 558 N.E.2d 528, 537 (1990).

The defendant argues that Officer Hornstein's testimony was inadmissible as hearsay.

■ Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted therein and dependent for its value on the credibility of the out-of-court declarant. *People v. Crowe*, 327 Ill. App. 3d 930, 937, 764 N.E.2d 1174, 1181 (2002). The fundamental basis for excluding such a statement is the lack of an opportunity to test the credibility of the statement through cross-examination. *Crowe*, 327 Ill. App. 3d at 937, 764 N.E.2d at 1181.

In *Lagestee*, the plaintiff testified that he reported his fall to a security guard, who later confirmed to the plaintiff and his attorneys that the plaintiff had been injured. However, testifying on behalf of the defendant, the security guard stated that the plaintiff had never reported his injury to her and that when the plaintiff and his attorneys visited her, the plaintiff requested that she give a statement that she had given the plaintiff a bandage. The security guard provided the statement but recanted it in her testimony. The trial court denied the plaintiff's request to call the attorneys or the plaintiff to rebut the security guard's testimony.

On review, the court held that the trial court erred in excluding the proposed rebuttal testimony. The court held that the security guard's testimony that the plaintiff and his attorneys solicited her to fabricate a statement was an affirmative matter raised by the defense and that the plaintiffs were "entitled to present rebuttal testimony to explain, discredit or impeach the defendants' evidence." *Lagestee*, 303 Ill. App. 3d at 943, 709 N.E.2d at 277.

■ Similarly, in this case, the plaintiffs did not seek to use Officer Hornstein's testimony to prove that Audrey was seated on the bench that was struck by the van but rather to impeach Linda's testimony by showing that she had previously stated that Audrey was seated on the bench struck by the van. Officer Hornstein's testimony also would have served to support Audrey's credibility, in light of Linda's testimony impeaching Audrey's version of the accident.

The defendants then argue that Officer Hornstein's testimony was properly barred because it could have been offered in the plaintiffs' case in chief. However, evidence that would otherwise constitute proper rebuttal evidence is not rendered improper rebuttal evidence merely because it could have been offered during the plaintiff's case in chief. *Hoem*, 239 Ill. App. 3d at 619-20, 606 N.E.2d at 830-31.

In *Hoem*, the court held that the trial court abused its discretion when it refused to allow the plaintiff to call a pulmonologist to rebut the defendants' experts' claims that the plaintiff's cardiologist did not correctly state the standard of care. The court noted that the defendants' motion for a directed verdict at the close of the plaintiff's case indicated to the plaintiff that the cardiologist's testimony was sufficient to establish her *prima facie* case and that it was only after the defendants presented their evidence challenging the cardiologist's testimony that the need to rebut that evidence arose. The court then stated as follows:

> "It would be a strange rule indeed that would require a plaintiff to present *all* conceivably relevant evidence in her case in chief— despite her preference not to do so—because she otherwise would

be barred from presenting that evidence in rebuttal *in the event* defendants present evidence in their case in chief that plaintiff needs to (and can) rebut. *** Such a rule would also be antithetical to the concerns expressed by all involved in our civil justice system about its present costs, wastes, and delays." (Emphasis in original.) *Hoem*, 239 Ill. App. 3d at 619, 606 N.E.2d at 830.

While the plaintiffs in this case were aware that Linda would testify that Audrey was not seated on the bench struck by the van, nevertheless, the evidence that she was seated on the other bench was not introduced until the defendant's case in chief. Thus, there was no reason for the plaintiffs to introduce Officer Hornstein's testimony until after the defendants had introduced that evidence in their case in chief.

We conclude that the trial court abused its discretion when it denied the plaintiffs' request to call Officer Hornstein as a rebuttal witness.

Where it appears an error did not affect the outcome of the trial, or where the reviewing court can see from the entire record that no harm has been done, the judgment will not be disturbed. *Jackson v. Pellerano*, 210 Ill. App. 3d 464, 471, 569 N.E.2d 167, 172 (1991). A party is not entitled to a reversal based upon rulings on evidence unless the error was substantially prejudicial and affected the outcome of the trial. *Jackson*, 210 Ill. App. 3d at 471, 569 N.E.2d at 172. The burden is on the party seeking reversal to establish prejudice. *Jackson*, 210 Ill. App. 3d at 471, 569 N.E.2d at 172.

While negligence was not at issue in this case, Linda's unrebutted testimony directly impacted on Audrey's credibility. See *Lagestee*, 303 Ill. App. 3d at 944, 709 N.E.2d at 277. Left unanswered by the trial court's ruling, Linda's testimony created doubts about Audrey's credibility, leaving the jury to wonder if Audrey was being truthful in her testimony regarding the severity of her condition as a result of the accident and giving credence to the defendant's theory that the majority of Audrey's complaints were the result of prior existing conditions unrelated to the accident. The fact that the jury awarded Audrey her medical expenses and nothing for pain and suffering strongly suggests that Audrey's credibility was in doubt in the eyes of the jury.

The prejudice is clear in this case. Therefore, we conclude that this error requires a new trial.

Since we are remanding for a new trial, we will address the plaintiffs' remaining contentions of error, which may arise on retrial of this case.

## C. Dr. Young

■ The plaintiffs argue that the trial court erred in granting the

defendants' motion *in limine*, barring Dr. Young from testifying that he had reviewed certain records since the time of his deposition.

On February 4, 2000, the plaintiffs filed their "Second Supplemental Answers to Supreme Court Rules 213(f) and (g) Interrogatories." Their answers disclosed, *inter alia*, the following regarding Dr. James Young:

> "It is expected that Dr. Young will testify consistent with his medical records and deposition testimony, as well as the medical and psychological records of the Rehabilitation Institute of Chicago and other healthcare providers, regarding the nature and extent of the injuries Plaintiff sustained as a result of the December 16, 1994 occurrence, that Plaintiff's injuries were caused by the complained of occurrence, and regarding the permanency of Plaintiff's injuries and Plaintiff's prognosis."

The second supplemental answers also included the following statement:

> "The bases for the opinions of all of the foregoing medical providers will or may be the following: Physical examinations, diagnostic testing and psychological evaluations of Audrey Chapman, conversations with and observations of Audrey and Clifford Chapman, reviews of their own medical records and those of all other medical providers identified herein; reviews of deposition transcripts, and their education, training and experience."

In their motion *in limine* No. 9, the defendants sought to bar Dr. Young from testifying that he reviewed the medical records of Drs. Spencer, Rana, and Weiner or the physical therapy records from Buffalo Grove or Lutheran General because, at his deposition, Dr. Young testified that he had not seen any of the above records.[2]

The trial court granted the defendants' motion *in limine* No. 9. The court ruled that the plaintiffs' disclosure of Dr. Young did not comply with Rule 213 (177 Ill. 2d R. 213). The court concluded that the plaintiffs had not disclosed that Dr. Young either reviewed or relied on the records of these specific doctors or the physical therapy records from Buffalo Grove or Lutheran General.

At the time of the trial in this case, Rule 213 provided in pertinent part as follows:

> "(f) **Identity and Testimony of Witnesses.** Upon written interrogatory, a party must furnish the identity and location of witnesses who will testify at trial, together with the subject of their testimony.

---

[2]Although motion *in limine* No. 9 indicates otherwise, the relevant portions of Dr. Young's deposition are not attached to the motion *in limine* in the record on appeal.

(g) **Opinion Witness.** An opinion witness is a person who will offer any opinion testimony. Upon written interrogatory, the party must state:

(i) the subject matter on which the opinion witness is expected to testify;

(ii) the conclusions and opinions of the opinion witness and the basis therefor; and

(iii) the qualifications of the opinion witness;

and provide all reports of the opinion witness." 177 Ill. 2d R. 213.

Other than the rule itself, the plaintiffs cite no authority to support their argument that the trial court erred in granting the defendants' motion *in limine* No. 9. The plaintiffs' failure to cite authority in support of their argument violates Supreme Court Rule 341(e)(7) (210 Ill. 2d R. 341(e)(7)), and is waived.

Assuming, *arguendo*, that we were to address the merits of this issue, we recognize that a trial court has broad discretion to grant or deny a motion *in limine*, and as such, we will not reverse the trial court's decision to grant or deny such a motion absent a clear abuse of discretion. *City of Quincy v. Diamond Construction Co.*, 327 Ill. App. 3d 338, 342-43, 762 N.E.2d 710, 714 (2002). In addition, a trial court's decision regarding whether an opinion has been adequately disclosed such that it may be admitted into evidence is also reviewed under the abuse of discretion standard. *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 576, 755 N.E.2d 1021, 1029 (2001).

Compliance with Rules 213(f) and (g) is not optional, and the barring of opinion witness testimony is an appropriate and available sanction for a party's failure to adequately disclose those opinions. *LoCoco v. XL Disposal Corp.*, 307 Ill. App. 3d 684, 691, 717 N.E.2d 823, 829 (1999).

Rule 213(g) clearly provides that, in conjunction with providing the witness's opinion, the basis for that opinion must be provided as well. We agree with the trial court that providing the basis in a "catchall" provision, unconnected with any specific witness or opinion, does not comply with the disclosure requirements of Rule 213.

We conclude that the trial court did not abuse its discretion when it granted the defendants' motion *in limine* No. 9.

### D. Dr. Neil Pliskin

■ The plaintiffs argue that the trial court erred when it granted the defendants' motion *in limine* No. 1 barring evidence that Dr. Pliskin, who was to testify for the plaintiffs, was originally retained by the defendant.

In the context of an eminent domain proceeding, the reviewing

court recognized the probative value of the admission into evidence of testimony of an expert appraisal witness' prior employment relationship with one of the parties to the condemnation proceeding. Nevertheless, the court determined that the probative value was outweighed by the evidentiary counterfactors of prejudice and creation of collateral issues and held that the evidence was properly excluded from the jury. See *Department of Public Works & Buildings v. Guerine*, 19 Ill. App. 3d 509, 513-14, 311 N.E.2d 722, 725-26 (1974).

The plaintiffs maintain that the defendants hired Dr. Pliskin to determine if Audrey was malingering. The plaintiffs reason that because Dr. Pliskin testified at trial that Audrey was not malingering and that the December 16, 1994, accident was the cause of her illness, the probative value of his testimony outweighed any prejudice to the defendants.

We disagree. In *Guerine*, the court assumed the scenario that the party decided not to call a previously hired appraiser because his valuation was not in line with the value the party had in mind. While recognizing the probative value of this evidence to the issue of just compensation, the court then recognized that such evidence would arouse the jury's emotions of prejudice and would require that the opposing party explain why it did not call the appraiser, creating a collateral issue and distracting the jury's attention from the main issue of determining just compensation. *Guerine*, 19 Ill. App. 3d at 513, 311 N.E.2d at 725; but see *County of St. Clair v. Wilson*, 284 Ill. App. 3d 79, 672 N.E.2d 27 (1996) (disclosure that an expert witness was originally retained by the opposing party appropriate as a general rule, declining to follow *Guerine*).[3]

While evidence that Dr. Pliskin was once employed by the defendants has probative value, admitting such evidence would focus the jury's attention on the fact that the defendant chose not to call Dr. Pliskin as a witness, rather than on the merits of the doctor's testimony. Under these circumstances, we cannot say that the trial court abused its discretion in granting the defendant's motion *in limine* No. 1.

### E. Dr. Sager

The plaintiffs argue that the trial court erred when it sustained

---

[3]The issue was raised in the context of a personal injury action in *Akers v. Atchison, Topeka & Santa Fe Ry. Co.*, 187 Ill. App. 3d 950, 543 N.E.2d 939 (1989). However, while noting that the case was distinguished from *Guerine* because, in *Guerine*, a motion *in limine* had been filed to prohibit the testimony regarding the prior employment, this district did not reach the merits of the issue because the issue was not preserved for appeal.

the defendants' objections to the plaintiffs' questions to Dr. David Sager, the defendants' expert witness, at his evidence deposition and struck sections of Dr. Sager's testimony.

The plaintiffs have failed to cite any authority in support of their argument. Therefore, it is waived. 210 Ill. 2d R. 341(e)(7).

The judgment of the trial court is reversed, and the cause is remanded for a new trial as to damages.

Reversed and remanded.

HOFFMAN, P.J., and KARNEZIS, J., concur.