No. 2--05--0802                              filed:
                                             10/23/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| BRIAN A. BRANDON and JEFFREY MILLER, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 99--L--42 |
| PAUL BONELL, JAN FREIL, and MARVIN WILLIAMS, | ) ) ) ) | Honorable David T. Fritts, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE KAPALA delivered the opinion of the court:

Plaintiffs, Brian A. Brandon and Jeffrey Miller, appeal from a July 25, 2005, order declaring that the circuit court lacked subject matter jurisdiction over plaintiffs' claims. For the reasons that follow, we affirm.

I. BACKGROUND

On December 31, 1996, plaintiffs were inmates at the Dixon Correctional Center (Dixon) and were assigned to work in the Dixon kitchen. Defendants, Paul Bonell, Jan Freil, and Marvin Williams, are employees of the Illinois Department of Corrections, assigned to manage the Dixon kitchen. On December 31, 1996, Bonell was the dietary manager of the kitchen, Williams was a supervisor of kitchen operations, and Freil supervised inmate workers. On December 10, 1999, plaintiffs filed a complaint in circuit

court, alleging that defendants had breached their duty to plaintiffs, pursuant to section 3--7--3 of the Unified Code of Corrections (730 ILCS 5/3--7--3(a) (West 1996)), to maintain the kitchen facilities and provide plaintiffs with a reasonably safe workplace. Plaintiffs alleged that as a result of this breach, plaintiffs were injured on December 31, 1996. In their complaint, plaintiffs alleged the following facts.

On December 31, 1996, Freil, Williams, and plaintiffs were working together in the Dixon kitchen. Prior to that date, Bonell had instructed Freil and Williams to have the inmates dispose of hot grease in the kitchen as soon as possible. Accordingly, on the date in question, Williams and Freil instructed plaintiffs to remove a heavy, 15- to 20-gallon vat of hot grease from the kitchen and dump it in an area outside. At the time, the grease in the vat was extremely hot, approximately 350 degrees. In order to dispose of the grease, plaintiffs placed the vat on a cart and pulled it outside onto a dock. Approximately 24 feet from the dock, there was a hose that had been running water onto the ground for some time and had caused ice to form. As plaintiffs carried the hot grease from the dock to the area where they were to dump it, Brandon slipped on the ice, and the hot grease spilled on plaintiffs. As a result, Brandon sustained burns and serious injuries, and Miller sustained burns on his hand.

On March 29, 2000, defendants filed a motion to dismiss plaintiffs' complaint, pursuant to section 2--615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2--615 (West 2000)). Defendants argued that plaintiffs' complaint failed to state a cause of action upon which relief could be granted, because the claims against defendants were barred by the principles of absolute immunity, sovereign immunity, and public officials' immunity.

Defendants argued, in part, that because they were acting in the scope of their state employment, in a sphere that was under their exclusive control, the Court of Claims had exclusive jurisdiction over plaintiffs' claims. On August 11, 2000, after hearing argument from both parties, Judge Tomas M. Magdich, the trial judge assigned to the case, denied defendants' motion to dismiss. On October 13, 2000, defendants filed their answer to plaintiffs' complaint, and they **raised the foregoing immunities as affirmative defenses**.

On October 18, 2002, defendants filed a motion for summary judgment pursuant to sections 2--1005(b) and (c) of the Code (735 ILCS 5/2--1005(b), (c) (West 2000)). In their motion, defendants again argued that because defendants were being sued within the scope of their state employment in a prison kitchen, they were protected by the principles of sovereign and absolute immunity. Defendants further asserted that because the suit was against State employees, the Court of Claims had exclusive jurisdiction and the circuit court lacked subject matter jurisdiction. **Defendants did not raise the defense of public officials' immunity in their motion for summary judgment, as they had in their motion to dismiss.** Attached to defendants' motion for summary judgment were excerpts from defendants' depositions.

In his deposition, Freil testified that on December 31, 1996, he and Williams were supervising the kitchen. Freil explained that after the fish were cooked that day, he told plaintiffs to empty the grease from the fryers into vats and to take the vats to the back door. **Freil denied ever telling plaintiffs to empty the vats on the dock.** Freil agreed that there was no written procedure for disposing of the grease, but stated that the normal procedure was to let the grease cool in the vat by the door and to check if the vat was hot before

emptying it. However, Freil stated, it was understood that the vats were to be emptied by the end of the shift.

Bonell also briefly discussed in his deposition the events of December 31, 1996. Bonell stated that he was the food manager of the Dixon kitchen and that he delegated to his staff the authority to oversee the inmates who worked in the kitchen. Bonell testified that on December 31, 1996, he had requested that the maintenance staff clean off the dock behind the kitchen. Bonell said that although maintenance personnel usually made rounds of the facility, he made a special request that the dock be cleaned off because of the weather; however, he did not say what the weather was like that day. In addition to discussing the events of December 31, 1996, Bonell specifically explained the kitchen policy on grease removal. The policy was to leave the grease to cool for two to three hours before taking it out. However, Bonell agreed that there were security concerns that encouraged the kitchen staff to remove the grease quickly. Bonell stated that inmates would steal the grease for bartering or use it to cook in their cells and that there was a danger the hot grease could be used to injure staff members.

In their depositions, defendants were asked to identify the differences between working in a correctional facility kitchen and working in a restaurant kitchen. Freil testified that there were many differences, because everything in the correctional facility kitchen had to be locked up and secured to prevent trading and trafficking. Freil noted that in a professional kitchen "on the street," the deep fryer grease is not changed after every use like in the correctional facility kitchen, because in a correctional facility there is a danger that inmates will steal the grease and barter with it or use it to harm staff members. In their

depositions, Williams and Bonell also acknowledged the security concerns associated with working in a prison kitchen. Bonell said that because of theft and safety concerns in a correctional facility, grease could not be stored outside, as in a restaurant kitchen. However, Bonell also acknowledged that nothing about the correctional facility setting prevented kitchen workers from allowing the grease to cool before it was removed.

On November 22, 2002, plaintiffs filed their response to defendants' motion for summary judgment. In their response, plaintiffs argued that because the duty defendants breached was not unique to their state employment, defendants were not entitled to the protections of sovereign immunity, and the Court of Claims does not have exclusive **jurisdiction. Plaintiffs also disputed defendants' claims of absolute immunity**. Attached to defendants' motion was the deposition of Ralph McKenzie.

In his deposition, McKenzie testified that he was an inmate at Dixon from about 1995 to 1998, and that he was working in the kitchen at Dixon on December 31, 1996. On that day, McKenzie was working as a cook on the second shift, which ran from 11 a.m. to 7 p.m. McKenzie said that Brandon was also working the second shift and was assigned to work in the kitchen. McKenzie was a cook on the serving line in the front of the kitchen and was not in any way involved with cleaning the fryers. McKenzie said that while he was on the serving line, he heard one of the kitchen supervisors shout to Brandon and one or two other inmates in the kitchen to go dump the grease from the fryers. McKenzie noted that there was a rush to get everything cleaned that night, because it was almost the end of the shift. McKenzie testified he did not see the grease vat taken out or emptied, but he later heard the vat fall and heard two men holler. He and others then ran to the back of

the kitchen and he saw that Brandon and another man had spilled the grease on the steps. McKenzie saw that the grease had soaked through Brandon's coat, and he saw hot vapors rising from the grease on Brandon's body. McKenzie also observed that Brandon had been carrying hot pads to move the vat. McKenzie said that he knew there was someone else hurt with Brandon, but McKenzie did not see him or know how badly he was hurt.

McKenzie described the scene of the accident. He said that outside of the kitchen door there was a dock area that extended approximately six feet to about six or seven steps. McKenzie said the grease spill was at the bottom of the steps. At the bottom of the steps, the ground leveled off. A large grease bin and a Dumpster were located in the back of this area. McKenzie explained that the temperature had dropped that day, between 5 p.m. and 7 p.m., but he saw no snow at the scene of the accident. McKenzie said that although he could not see ice on the stairs, he knew it was there, because the painted concrete got very slippery even if there was just water on it.

McKenzie stated that the kitchen staff used the dock to clean and sanitize the meal carts they used in the kitchen. A 50-foot fire hose was used for cleaning the carts and the dock. The fire hose was connected inside the kitchen and ran through a hole out to the dock. According to McKenzie, the fire hose frequently leaked and had to be fixed on multiple occasions. McKenzie described the leak as a constant stream that was more than a drip. Because of the leak in the hose, ice had formed in the dock area on prior occasions and, therefore, salt was kept on the dock and put on the steps.

On December 31, 1996, McKenzie said, the hose was wound up on the dock, and he noticed that the hose was leaking, causing the dock to get wet. **When the hose was**

used, water would run into a drain below the steps. McKenzie estimated that the drain was about an inch from the dock. McKenzie explained that, although the leak from the hose was not directly on the stairs, the steps frequently got wet because inmates tracked water onto the stairs as they went up and down the steps. McKenzie surmised that the steps were slippery because the hose had leaked, leaving water at the bottom of the dock area, which then got tracked onto the stairs and froze when the temperature dropped. However, McKenzie did not see Brandon's accident and could not say what caused Brandon's fall. McKenzie did not notice salt around the area and did not see anyone out sprinkling salt in the area on that particular day.

On September 24, 2003, Judge Magdich issued a memorandum decision denying defendants' motion for summary judgment. In his decision, Judge Magdich reasoned that because defendants were not correctional officers, responsible for inmate custody and discipline, defendants' duty as kitchen managers was the same duty owed by any kitchen manager in the State of Illinois. Judge Magdich concluded that this duty arose independently of defendants' state employment and that, therefore, defendants' actions were not protected by sovereign immunity. Judge Magdich also rejected defendants' argument that absolute immunity barred plaintiffs' claims.

The record indicates that on December 3, 2003, Judge Magdich assigned this case to Judge David Fritts. However, Judge John Payne entered the next orders in the case. On November 22, 2004, Judge Payne set the case for jury trial on March 28, 2005. On February 2, 2005, defendants filed their first through fourteenth motions in limine. In their first motion in limine, they asked the court to bar all claims against defendants, based upon

the doctrines of sovereign immunity and public officials' immunity. Defendants again argued that the court lacked subject matter jurisdiction because the conduct at issue occurred as a result of defendants acting in the scope of their employment and that a prison kitchen is uniquely different from any other kitchen. Defendants did not raise the defense of absolute immunity in their first motion in limine, as they had earlier in their motion to dismiss and their motion for summary judgment. Defendants attached to their motions in limine the excerpts from their depositions that they had attached to their motion for summary judgment. In their second motion in limine, defendants sought to bar evidence, argument, or intimation that defendants violated any Dixon policies, arguing that pursuant to the doctrine of sovereign immunity, the circuit court lacked subject matter jurisdiction to hear claims against state employees based upon violations of a state law or policy.

On February 17, 2005, defendants filed their seventeenth motion in limine, asking the trial court to bar evidence of any duty defendants owed plaintiffs pursuant to section 3--7--3 of the Unified Code of Corrections (730 ILCS 5/3--7--3 (West 1996)). Section 3--7--3 requires standards of safety to be established and enforced by the Department of Corrections and requires all buildings to be properly maintained. Defendants noted that plaintiffs had alleged in their complaint that defendants violated their duty under this statute. Defendants argued that because the statute imposes a duty only on the Department of Corrections, it would violate principles of sovereign immunity and the Court of Claims Act (705 ILCS 505/1 et seq. (West 2004)) to allow evidence of a duty derived

from the statute. **Defendants did not raise the defenses of absolute immunity or public officials' immunity in their seventeenth motion in limine.**

**On February 18, 2005, plaintiffs filed a motion to strike defendants' affirmative defenses.** Plaintiffs stated that Judge Magdich had already ruled upon all of defendants' immunity defenses when he considered defendants' motion to dismiss and their motion for summary judgment. Next, on February 25, 2005, **plaintiffs filed a motion to have another judge besides Judge Payne hear the case. On February 28, 2005, Judge Payne granted plaintiffs' motion, and the case was again assigned to Judge Fritts.**

On March 9, 2005, plaintiffs filed a motion for leave to file an amended complaint. Plaintiffs sought to refer to a different statute under which defendants' duty to plaintiffs arose. In their original **complaint,** plaintiffs alleged that defendants breached their duty to plaintiffs pursuant to section 3--7--3 of the Unified Code of Corrections. In their motion for leave to file an amended complaint, plaintiffs indicated they wished to instead cite sections 2 and 3 of the Health and Safety Act (820 ILCS 225/2, 3 (West 2004)) as the statute to define defendants' duty. Sections 2 and 3 require all employers, including the State of Illinois, to reasonably protect the health and safety of their employees and to furnish employees with a work environment free from recognized hazards that are likely to cause death or serious injury. On March 24, 2005, defendants filed their response to plaintiffs' motion for leave to file an amended complaint, arguing that it would be unfair and prejudicial for plaintiffs to amend their complaint after defendants' seventeenth motion in limine had pointed out the fatal flaw in the complaint and after plaintiffs received a change in judges three weeks before trial. On March 28, 2005, the parties appeared before Judge

Fritts to argue plaintiffs' motion for leave to amend their complaint. Following argument, Judge Fritts advised the parties he would enter a written opinion as to whether the amended complaint would be allowed.

On July 25, 2005, when the parties appeared before the court for a status date, Judge Fritts entered a memorandum decision in the case. In his decision, Judge Fritts found that the doctrine of sovereign immunity applied and that, as a result, the circuit court lacked subject matter jurisdiction to hear the case. Judge Fritts reasoned that because of security concerns, the duties of all employees within the institution of the Department of Corrections are unique to their state employment and, therefore, the duty defendants were charged with breaching derived only from their state employment. Judge Fritts indicated in his written decision that his ruling was in response to issues raised in defendants' first motion in limine; however, during the parties' July 25, 2005, appearance, Judge Fritts **orally** identified defendants' seventeenth motion in limine as the basis of his decision. In response to plaintiffs' attorney's questions, Judge Fritts noted he had not ruled on plaintiffs' motion to amend their complaint, because the circuit court did not have jurisdiction over the claims.

Plaintiffs now appeal Judge Fritts' July 25, 2005, decision that the circuit court lacks subject matter jurisdiction.

## DISCUSSION

On appeal, plaintiffs **argue** that the circuit court erred when it declared that it did not have subject matter jurisdiction over plaintiffs' claims. Plaintiffs **contend** that, rather than **addressing** the circuit court's subject matter jurisdiction, Judge Fritts should have denied

defendants' motions in limine that raised immunity defenses, because Judge Magdich had already considered the merits of the issue of sovereign immunity twice and ruled against defendants both times. **Also,** plaintiffs **contend** that the circuit court has subject matter jurisdiction and that sovereign immunity does not bar plaintiffs' claims, because defendants' duty to plaintiffs arose independently of their state employment. Finally, plaintiffs contend that the circuit court erred because it did not allow plaintiffs the opportunity to amend their complaint. We will analyze each of the three contentions separately.

### A. Propriety of Addressing Subject Matter Jurisdiction

Plaintiffs contend that the trial court erred in several ways when it **addressed** the issue of subject matter jurisdiction **in the course of its consideration of defendants'** motions in limine. First, plaintiffs argue that affirmative defenses, such as subject matter jurisdiction, cannot be raised **by a party** in any later motion once the trial court has already considered the issue on its merits in response to a motion to dismiss pursuant to section 2--619 of the Code.[1] **Second, plaintiffs argue that the trial court erred when it disposed of the case for lack of subject matter jurisdiction, because Judge Fritts considered the merits of defendants' affirmative defense of sovereign immunity when Judge Magdich had already considered the issue on the merits in ruling on defendants' motion to dismiss and motion for summary judgment.** Finally, plaintiffs argue that, if Judge Fritts' action could be

---

[1]We note that defendants filed their motion to dismiss pursuant to section 2--615 of the Code (735 ILCS 5/2--615 (West 2004)), not section 2--619 of the Code (735 ILCS 5/2--619 (West 2004)).

construed as a reconsideration of Judge Magdich's rulings, the court erred, because defendants failed to include in their motions in limine any new facts or law that would merit the court's review of Judge Magdich's previous rulings.

A trial court's ruling on a motion in limine is normally reviewed under an abuse of discretion standard. Chapman v. Hubbard Woods Motors, Inc., 351 Ill. App. 3d 99,110 (2004). However, plaintiffs argue that the court erred when it allowed defendants to raise and then considered the issue of subject matter jurisdiction embedded in their motions in limine. Whether a trial court may consider an issue that is raised in a motion in limine but was previously resolved by a judicial determination in the case is an issue of law, which we review de novo. AC & S v. Industrial Comm'n, 304 Ill. App. 3d 875, 879 (1999).

Although plaintiffs assert the three bases of error outlined above, as an initial matter we must consider if these issues are properly before this court. Preservation of a question for review requires an appropriate objection in the court below, and failure to object constitutes waiver. Bachman v. General Motors Corp., 332 Ill. App. 3d 760, 782 (2002). Accordingly, issues not raised in the trial court may not be raised for the first time on appeal. Hamilton v. Conley, 356 Ill. App. 3d 1048, 1052 (2005). In challenging defendants' motions in limine in the trial court, plaintiffs failed to raise any of the procedural grounds raised in their appellant brief.

In their brief, plaintiffs point out that at a hearing on March 28, 2005, plaintiffs' counsel argued that Judge Magdich had previously made a ruling on the issue of subject matter jurisdiction. However, plaintiffs fail to note that the March 28, 2005, hearing concerned plaintiffs' motion to amend their complaint. Plaintiffs' counsel cited Judge

Magdich's rulings to show that defendants would not be harmed by plaintiffs' proposed amendment to their complaint, not to argue that the court could not entertain the issues raised in defendants' motions in limine. **In fact, plaintiffs never responded to defendants' seventeenth motion in limine, and their response to defendants' first motion in limine was limited to their contention that the court had subject matter jurisdiction over their complaint. Plaintiffs never argued that defendants were barred from raising their affirmative defenses in their motions in limine, that the court was barred from considering those issues following Judge Magdich's rulings, or that there was no new evidence to support any reconsideration of Judge Magdich's rulings. In addition, plaintiffs never filed a motion to reconsider or vacate Judge Fritts' decision.** As a result, plaintiffs' arguments that the court **should not have addressed** the issue of subject matter jurisdiction raised in defendants' motions in limine were waived when they failed to **object** to **the propriety of defendants raising the issue or the propriety of the judge taking action on it.**

Waiver aside, however, **all three of plaintiffs' arguments regarding the procedural aspects of Judge Fritts' ruling fail to identify a reversible error by the trial court. First, even** if defendants improperly raised the issue of subject matter jurisdiction in their motions in limine, the trial court had the power to rule on its subject matter jurisdiction absent any motion by defendants. See Barrington Community Unit School District No. 220 v. Special Education District of Lake County, 245 Ill. App. 3d 242, 247 (1993). Subject matter jurisdiction can be raised sua sponte by the trial court at any time, since the lack of subject matter jurisdiction deprives the trial court of all power except to dismiss the action. Barrington Community Unit School District No. 220, 245 Ill. App. 3d at 247. **Therefore, any**

error in considering defendants' affirmative defenses in their motions in limine was harmless because the trial court did not need a proper motion from defendants to confront the issue of subject matter jurisdiction. Barrington Community Unit School District No. 220, 245 Ill. App. 3d at 247.

Second, a long line of cases has condoned the authority of a successor judge to change the interlocutory rulings of a predecessor judge. Rowe v. State Bank of Lombard, 125 Ill. 2d 203, 213-14 (1988); Towns v. Yellow Cab Co., 73 Ill. 2d 113, 121 (1978); Bailey v. Allstate Development Corp., 316 Ill. App. 3d 949, 956 (2000); Lake County Riverboat L.P. v. Illinois Gaming Board, 313 Ill. App. 3d 943, 950 (2000). A successor court has the power to modify or revise an interlocutory order at any time prior to final judgment. Bailey, 316 Ill. App. 3d at 956; see also Rowe,125 Ill. 2d at 213-14; Towns, 73 Ill. 2d at 121. When the interlocutory order involved the exercise of a prior judge's discretion, the successor judge may overturn the order only where new facts or circumstances warrant such action and there is no evidence of judge shopping. Lake County Riverboat, 313 Ill. App. 3d at 950. On the other hand, where the successor judge finds that the previous interlocutory order is erroneous as a matter of law, the successor judge, absent evidence of judge shopping, may correct the previous order regardless of the existence of a new matter. Lake County Riverboat, 313 Ill. App. 3d at 950.

In this case, in his memorandum decision Judge Fritts ruled on the issue of whether the doctrine of sovereign immunity prohibited the subject matter jurisdiction of the circuit court, an issue that was already considered by Judge Magdich. Judge Magdich found that sovereign immunity did not bar plaintiffs' claims against defendants when he denied

defendants' motion to dismiss and defendants' motion for summary judgment. Both the denial of a motion to dismiss and the denial of a motion for summary judgment are interlocutory orders that may be revised prior to final judgment. Bailey, 316 Ill. App. 3d at 956; Pearson v. Partee, 218 Ill. App. 3d 178, 181-82 (1991). Moreover, there is no evidence of judge shopping by defendants. No party requested that Judge Magdich reassign the case, and plaintiffs explain in their brief that the case was originally reassigned because of Judge Magdich's retirement. The case then was reassigned from Judge Payne to Judge Fritts at the request of plaintiffs, not defendants.

Because there is no evidence of judge shopping by defendants, Judge Fritts had the right to rule on the issues already addressed by Judge Magdich's interlocutory orders if either (1) the previous rulings were discretionary and new matters justified reconsideration, or (2) the previous rulings were erroneous as a matter of law. See Bailey, 316 Ill. App. 3d at 956-57; Lake County Riverboat, 313 Ill. App. 3d at 950. Subject matter jurisdiction is not discretionary, but a matter of law. Gassman v. RGB Riverboat, 329 Ill. App. 3d 224, 226 (2002). As a result, Judge Fritts' reconsideration of the issue of subject matter jurisdiction was proper even without new evidence. Lake County Riverboat, 313 Ill. App. 3d at 950. Consequently, plaintiffs' third argument, that Judge Fritts erred by reconsidering Judge Magdich's rulings without new evidence, also fails. Thus, our focus now turns to plaintiff's second contention, that the circuit court had subject matter jurisdiction to hear plaintiffs' claims.

B. Whether Subject Matter Jurisdiction Exists

Plaintiffs contend that the trial court erred when it dismissed plaintiffs' claims for lack of subject matter jurisdiction, because the doctrine of sovereign immunity does not bar plaintiffs' claims against defendants as individual employees of the Department of Corrections. Plaintiffs argue that the circuit court has subject matter jurisdiction over plaintiffs' claims because the duty defendants allegedly breached was one that arose independently of their state employment. Defendants respond that they are protected by sovereign immunity because plaintiffs' claims are truly against the State of Illinois **and, therefore, the circuit court does not have subject matter jurisdiction.** Subject matter jurisdiction is an issue of law, which we review de novo. Gassman, 329 Ill. App. 3d at 226.

Article XIII, section 4, of the Illinois Constitution of 1970 abolishes sovereign immunity in this state except as the General Assembly provides by law. Ill. Const. 1970, art. XIII, §4. In 1972, the legislature enacted the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2004)), which states that the State of Illinois shall not be made a party or defendant in any court, except as provided by the Illinois Public Labor Relations Act (5 ILCS 315/1 et seq. (West 2004)) or the Court of Claims Act. The Court of Claims Act gives the Court of Claims exclusive jurisdiction over all tort claims against the State. 705 ILCS 505/8(d) (West 2004). Therefore, in the case before us, if defendants are insulated from liability by sovereign immunity, exclusive jurisdiction rests in the Court of Claims, and the circuit court has no subject matter jurisdiction. See Currie v. Lao, 148 Ill. 2d 151, 157-58 (1992).

We must pause here to clarify how the Court of Claims Act and the State Lawsuit Immunity Act can regulate the jurisdiction of the circuit court. Our supreme court has held

that because the circuit courts' subject matter jurisdiction over justiciable matters derives solely from the Illinois Constitution, legislative enactments cannot create or limit the circuit courts' subject matter jurisdiction. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 335 (2002). We recognize that allowing the State Lawsuit Immunity Act and the Court of Claims Act to control the circuit courts' jurisdiction over claims against the State, instead of merely creating affirmative defenses to claims against the State, may seem to conflict with the holdings of Belleville. However, in Healy v. Vaupel, 133 Ill. 2d 295, 316 (1990), our supreme court held that the Court of Claims Act did not conflict with the provision of **the constitution giving the courts jurisdiction over all justiciable matters. Our supreme court** stated:

"Article XIII, section 4, of the Illinois Constitution abolishes sovereign immunity '[e]xcept as the General Assembly may provide by law.' Pursuant to that express grant of authority, the legislature has established the Court of Claims, to serve as the forum for hearing and determining claims against the State. We discern no conflict between the two constitutional provisions [abolishing sovereign immunity (Ill. Const. 1970, art. XIII, §4) and granting the circuit courts jurisdiction over all justiciable matters (Ill. Const. 1970, art. VI, §9)] and the Court of Claims Act." Healy, 133 Ill. 2d

at 316.

Thus, because our constitution provides for both the legislature's enactment of sovereign immunity and the courts' authority over justiciable matters, it appears that an action against the State, which is protected by the legislature pursuant to its authority under the constitution to establish sovereign immunity, is not a justiciable matter over which the circuit court has jurisdiction. Therefore, we proceed to determine if plaintiffs' action is one against the State and thus falls within the exclusive jurisdiction of the Court of Claims such that it is not a justiciable matter over which the circuit court has subject matter jurisdiction.

The determination of whether an action is one against the State does not necessarily depend on whether the State is named as a party. Kawaguchi v. Gainer, 361 Ill. App. 3d 229, 243 (2005). Whether an action is one against the State depends on the issues raised and the relief sought. Jinkins v. Lee, 209 Ill. 2d 320, 330 (2004). An action that is brought nominally against a state employee in his individual capacity but "could operate to control the actions of the State or subject it to liability" is considered an action against the State. Currie, 148 Ill. 2d at 158. Treating such actions against state employees as against the State prevents plaintiffs from sidestepping state immunity by naming only individual state employees as defendants. Kawaguchi, 361 Ill. App. 3d at 243. Accordingly, defendants are cloaked with the protections of sovereign immunity only if the suit against them are truly against the State. See Currie, 148 Ill. 2d at 158-59.

In Jinkins, our supreme court reiterated the three-part test it established in Healy to determine if an action against a state employee is truly one against the State. An action

against a state employee is considered one against the State when (1) there are no allegations that an employee or agent of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed by the employee independently of his state employment; and (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions. Jinkins, 209 Ill. 2d at 330. In this case, defendants were working in their capacity as Department of Corrections employees at the time plaintiffs were injured. Plaintiffs make no argument on **appeal that the facts alleged in their complaint show** that defendants were acting beyond the scope of their authority **through wrongful acts** or that the actions complained of involve matters outside of defendants' normal and official functions. Therefore, the dispute here centers on the second factor above, whether the duty allegedly breached was one defendants owed independently of their state employment. Jinkins, 209 Ill. 2d at 331.

The determination of whether an employee has breached a duty owed independently of his employment is guided by the "source of the duty" test established by our supreme court in Currie. Jinkins, 209 Ill. 2d at 331. According to the test, in order to determine if sovereign immunity protects an employee for his own act of negligence, one must look to the source of the duty the employee is charged with breaching in committing the negligent act. Currie, 148 Ill. 2d at 159. When the state employee allegedly breaches a duty that arises solely by virtue of his state employment, sovereign immunity will bar in circuit court an action that is founded on that breach. Currie, 148 Ill. 2d at 159. However, when an employee breaches a duty imposed independently of his state employment, he is entitled to no more immunity than is a private individual who breaches that same duty

and the mere fact of his employment will not endow him with heightened protection. Currie, 148 Ill. 2d at 160. Thus, even if an employee is acting in the scope of his employment, he will not be protected by sovereign immunity for breaching a duty that arises separately from his state employment. Currie, 148 Ill. 2d at 160.

When applying the source of duty test, courts have found that an independent duty is a duty imposed by the employee's status as something other than an employee. Jinkins, 209 Ill. 2d at 333; Currie, 148 Ill. 2d at 160; Kawaguchi, 361 Ill. App. 3d at 244; Johnson v. Halloran, 312 Ill. App. 3d 695, 699-700 (2000); Janes v. Albergo, 254 Ill. App. 3d 951, 964 (1993). For example, professionals employed by the State, such as public defenders and doctors at state hospitals, are not protected by sovereign immunity when they breach a professional duty owed by every member of that profession. Jinkins, 209 Ill. 2d at 333; Johnson, 312 Ill. App. 3d at 699-700. Because a professional duty derives from the duty of care imposed by one's status as a professional, this is an independent duty that does not arise solely from one's employment and, thus, a breach is not protected by sovereign immunity. Jinkins, 209 Ill. 2d at 333-34.

In the same way, the duty to drive safely is a duty one owes to others regardless of one's employment, because it arises from one's status as a person operating a vehicle on a state roadway and not as a person employed as a driver. Currie, 148 Ill. 2d at 160. As a result, when a state employee breaches her duty to drive safely, even if she is driving within the scope of her state employment, she has breached a duty not imposed solely by her employment and is not protected by sovereign immunity. Currie, 148 Ill. 2d at 160.

However, the "source of duty" test is not without exceptions. Currie, 148 Ill. 2d at 160. **When the conduct related to a state employee's independent duty is unique to his state employment such that a suit challenging this conduct could affect state policies or control its actions, then sovereign immunity will bar a suit against the state employee.** Currie, 148 Ill. 2d at 160; Kawaguchi, 361 Ill. App. 3d at 244. **For example, where a police officer was responding to an emergency call by driving south across westbound traffic, this manner of driving was considered unique to her state employment, and sovereign immunity applied despite her independent duty to drive with reasonable care.** Kawaguchi, **361 Ill. App. 3d at 244.**

**Like duties as a professional and duties as a motor vehicle operator**, duties imposed by statute are normally considered independent duties because most statutes impose specific requirements on all people regardless of their employment. Fritz v. Johnston, 209 Ill. 2d 302, 314 (2004). For example, when an employee in the course of his employment breaches a duty imposed by the Illinois Criminal Code of 1961 (720 ILCS 5/1--1 et seq. (West 2004)), he has breached an independent duty and is not protected by sovereign immunity. Fritz, 209 Ill. 2d at 314. However, recently in Fritz our supreme court clarified that where a statute imposes a duty only upon state employees, this statutory duty arises solely from their employment. Fritz, 209 Ill. 2d at 314. As a result, an action resulting from a state employee's breach of a duty imposed solely by a statute pertaining only to state employees is protected by sovereign immunity. See Fritz, 209 Ill. 2d at 314. For example, where a professor sued the Board of Governors of State Colleges and Universities of Illinois, alleging that they had discharged her in violation of a section of the Board of

Governors Act, which applied only to the operation, management, and control of the State Colleges and Universities System, the court applied sovereign immunity despite the plaintiff's argument that the Board of Governors violated a statute.  See Fritz, 209 Ill. 2d at 314, citing Ellis v. Board of Governors of State Colleges & Universities, 102 Ill. 2d 387, 389 (1984).

In this case, plaintiffs, defendants, and the trial court all focused their analyses on whether defendants' duty to plaintiffs was unique to their state employment by distinguishing the aspects of prison kitchens from private kitchens.  Plaintiffs argue that because all kitchen managers and supervisors owe their employees a duty to maintain a safe work environment, defendants' duty is independent of their state employment. Defendants argue that the safety concerns and nutritional differences between a private kitchen and a prison kitchen make defendants' duty to maintain a safe kitchen environment unique to their state employment.  **Defendants also argue that plaintiffs' suit could result in a change in the State's grease disposal policies.**

In light of these arguments, the trial court **held** that because the procedure to dispose of hot grease within a correctional facility is sufficiently different from that of a private enterprise, the duty defendants breached arose solely by reason of their state employment. **Therefore, the trial court concluded that sovereign immunity barred the suit and that the court lacked subject matter jurisdiction.  It is worth noting here that the court did not err in asserting its authority over the issue of sovereign immunity in order to determine its jurisdiction.  Trial courts have the authority and obligation to consider their own jurisdiction.  In re K.C., 323 Ill. App. 3d 839, 846 (2001); Reyes v. Court of Claims,**

299 Ill. App. 3d 1097, 1101 (1998).  Therefore, even if a court lacks subject matter jurisdiction, it has the power to determine that it lacks subject matter jurisdiction and dismiss the case on that ground.  See Klopfer v. Court of Claims, 286 Ill. App. 3d 499, 505 (1997); Barrington Community Unit School District No. 220, 245 Ill. App. 3d at 247; Pedigo v. Department of Revenue, 105 Ill. App. 3d 759, 762-63 (1982).

Although the parties and the trial court outlined the differences between supervising private kitchens and correctional facility kitchens, we believe the focus on these differences is misplaced in light of the facts alleged in the complaint.  However, we may affirm the trial court on any ground called for by the record, regardless of whether the trial court relied on that ground.  Thomson Learning, Inc. v. Olympia Properties, LLC, 365 Ill. App. 3d 621, 632 (2006).  In their complaint, plaintiffs allege that defendants breached their specific duty under section 3--7--3 of the Unified Code of Corrections to properly maintain the kitchen facilities and adjacent grounds and to provide  plaintiffs with a reasonably safe workplace.  Section 3--2--1 of the Unified Code of Corrections states that the Unified Code of Corrections consolidates in one statute the "powers and duties of the Department of Corrections."  730 ILCS 5/3--2--1 (West 1996).  Section 3--7--3 of the Unified Code of Corrections states:

"Institutional Safety and Sanitation. (a) Standards of sanitation and safety for all

institutions and facilities shall be established and enforced by the Department.  All buildings

-23-

and facilities shall be cleaned regularly and properly maintained. Ventilation of air and heat

adequate to the climate and season shall be provided." 730 ILCS 5/3--7--3(a) (West1996).

As noted by the language, this statute applies only to the Department of Corrections. Consequently, the statute imposes a duty solely on the Department of Corrections, and thus, any duty it imposes on Department of Corrections employees arises solely by virtue of their employment. Further, this court cannot find any common-law duty, akin to that of lawyers, doctors and other health professionals, and motor vehicle operators, that kitchen supervisors have to keep kitchen staff members safe. See Fritz, 209 Ill. 2d at 314. Therefore, the trial court did not err in concluding that the duty defendants allegedly breached arose solely from their employment

Because plaintiffs do not allege any facts showing that defendants breached a duty to plaintiffs that arose independently of defendants' state employment, the action is considered one against the State. Jinkins, 209 Ill. 2d at 330. In addition, because defendants' duty does not arise independently of their employment, we need not address if defendants' conduct was unique to their employment such that a lawsuit aimed at their conduct would operate to control state policies or actions, such that sovereign immunity applies.

However, before concluding our analysis of the circuit court's subject matter jurisdiction, we need to address plaintiffs' contention that the legislature did not intend the Court of Claims to have exclusive jurisdiction over claims against employees of the

Department of Corrections.  Plaintiffs argue that because section 8(d) of the Court of Claims Act fails to specifically mention the Department of Corrections as an agency over which the Court of Claims has exclusive jurisdiction, the legislature did not intend for the Court of Claims to have sole jurisdiction over all tort actions against employees of the Department of Corrections.  Section 8(d) of the Court of Claims Act states, in part, that the Court of Claims has exclusive jurisdiction over:

"All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against the Medical Center Commission, the Board of Trustees of the University of Illinois, the Board of Trustees of Southern Illinois University, the Board of Trustees of Chicago State University, the Board of Trustees of Eastern Illinois University, the Board of Trustees of Governors State University, the Board of Trustees of Illinois State University, the Board of Trustees of Northeastern Illinois University, the Board of Trustees of Northern Illinois University, the Board of Trustees of Western Illinois University, or the Board of Trustees of the Illinois Mathematics and Science Academy."  705 ILCS 505/8(d) (West 2004).

Plaintiffs assert that because the legislature used the **word "and" to precede the words "all like claims" in section 8(d) of the Court of Claims Act,** state agencies not listed **specifically in section 8(d),** such as the Department of Corrections, were intended to be excluded from the exclusive jurisdiction of the Court of Claims.  As a result, plaintiffs contend that

defendants must show that the action is only nominally against them, and in effect is an action against the State.

Plaintiffs never explain why the absence of the Department of Corrections from section 8(d) of the Court of Claims Act specifically precludes defendants from asserting a defense of sovereign immunity pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2004)). **Regardless of the agency in which a state employee works,** neither the State Lawsuit Immunity Act nor the Court of Claims Act expressly protects a state employee from a lawsuit individually against him or her. See 745 ILCS 5/1 (West 2004); 705 ILCS 505/8(d) (West 2004). An action against a state employee is **barred by** sovereign immunity only when it is an action truly against the State. Currie, 148 Ill. 2d at 159. As a result, as discussed earlier, in order for any state employee to invoke the State Lawsuit Immunity Act, the court must find that the action is only nominally against the employee and is in effect an action against the State. Healy, 133 Ill. 2d at 309. Plaintiffs do not explain how the absence of the Department of Corrections in section 8(d) of the Court of Claims Act changes **the application of sovereign immunity to defendants.**

**Moreover, it is the State Lawsuit Immunity Act that provides the State with immunity and gives the Court of Claims Act its power to outline the exceptions to this immunity.** 745 ILCS 5/1 (West 2004). **Therefore, the State Lawsuit Immunity Act, not the Court of Claims Act, is determinative of whether sovereign immunity applies to a State entity.** See **Association of Mid-Continent Universities v. Board of Trustees of Northeastern Illinois University, 308 Ill. App. 3d 950, 953 (1999).** As discussed earlier, the State Lawsuit Immunity Act provides that the State may not be sued in any court, unless it is provided for

in the specified acts.  745 ILCS 5/1 (West 2004).  For the purposes of the State Lawsuit Immunity Act, the sovereign immunity of the State includes immunity from present **claims** against arms of the State.  Williams v. Medical Center Comm'n, 60 Ill. 2d 389, 393 (1975); Williams v. Davet, 345 Ill. App. 3d 595, 599 (2003); Gordon v. Department of Transportation, 109 Ill. App. 3d 1071, 1074 (1982).   Generally, an agency of the State is considered an arm of the State itself, which is immune from suit in the circuit court.  Davet, 345 Ill. App. 3d at 599.   **Accordingly, when a plaintiff attempts to enforce a present claim against a state agency (see Rockford Memorial Hospital v. Department of Human Rights, 272 Ill. App. 3d 751, 755 (1995)), provided that such agency does not exceed its authority under the law (Hadley v. Department of Corrections, 362 Ill. App. 3d 680, 683 (2005)), a judgment against it would effectively be a judgment against the State, and therefore the claim is subject to sovereign immunity (Foley v. American Federation of State, County, & Municipal Employees, 199 Ill. App. 3d 6, 13 (1990)).**  The Department of Corrections is in no way a separate legal entity.  Foley, 199 Ill. App. 3d at 14.   The Department of Corrections is an agency of the State and as such, it is indisputably an arm of the State. Foley, 199 Ill. App. 3d at 13. Accordingly, suits against it would subject the State to liability. Thus, because the State Lawsuit Immunity Act bars claims against the State in any court except as provided in the specified acts, we fail to see how the application of section 8(d) of the Court of Claims Act would allow the circuit court subject matter jurisdiction over claims against Department of Corrections  employees who show that the claims are only nominally against them.

Because we find that plaintiffs' claims are only nominally against defendants and are truly claims against the State, the claims are barred by the principles of sovereign immunity asserted in the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2004). Therefore, we find that the circuit court properly held that it lacked subject matter jurisdiction to hear plaintiffs' suit. We now turn to whether the circuit court erred **in declining to act upon** plaintiffs' motion to amend their complaint.

### C. Plaintiffs' Motion to Amend Complaint

Plaintiffs argue that the trial court erred when it ruled on defendants' motions in limine without first ruling on and granting plaintiffs' motion for leave to file an amended complaint. Plaintiffs contend that their motion for leave to amend their complaint was intended to allow them to change their reference to the statute imposing defendants' duty to plaintiffs from section 3--7--3 of the Unified Code of Corrections  (730 ILCS 5/3--7--3(a) (West1996)) to sections 2 and 3 of the Health and Safety Act (820 ILCS 225/2, 3 (West 2004)) and thereby dispute defendants' contention that the circuit court lacked jurisdiction. Defendants respond that once the court determined that it lacked subject matter jurisdiction it could not take any action other than to dismiss plaintiffs' claims and, moreover, that even if plaintiffs had amended their complaint, their claims would still have been barred by sovereign immunity.

Section 2--616 of the Code allows amendment of a complaint at any time before final judgment, in order to enable a plaintiff to sustain the claim that was intended. 735 ILCS 5/2--616(a) (West 2004). The decision to permit an amendment of a complaint is a matter within the sound discretion of the trial court, and we will not disturb the trial court's decision

absent an abuse of that discretion. R.J. Management Co. v. SRLB Development Corp., 346 Ill. App. 3d 957, 969 (2004). The trial court should exercise its discretion liberally in favor of allowing an amendment, and any doubts should be resolved in favor of allowing the amendment if the ends of justice will be furthered by allowing it. Hartshorn v. State Farm Insurance Co., 361 Ill. App. 3d 731, 735 (2005). However, the denial of a plaintiff's request to amend a complaint is appropriate if even after the amendment, no cause of action can be stated. Terry v. Metropolitan Pier & Exposition Authority, 271 Ill. App. 3d 446, 456 (1995).

Assuming, without deciding, that the trial court erred when it ruled on the issues raised in defendants' motions in limine prior to ruling on plaintiffs' motion for leave to file an amended complaint, this error was harmless because plaintiffs' amended complaint would also have been barred by the doctrine of sovereign immunity. See City of Elgin v. County of Cook, 169 Ill. 2d 53, 71-72 (1995); Firestone v. Fritz, 119 Ill. App. 3d 685, 690 (1983). Plaintiffs argue that the proposed amended complaint would have merely corrected the statutory reference in the complaint to conform with the duty plaintiffs asserted throughout the litigation, and thus, asserted an independent duty of defendants that would allow the trial court subject matter jurisdiction over plaintiffs' claims. We disagree.

Plaintiffs' proposed amended complaint alleges that it was the duty of defendants under sections 2 and 3 of the Health and Safely Act to properly maintain the kitchen facilities and adjacent grounds and to provide plaintiffs with a reasonably safe workplace. 820 ILCS 225/2, 3 (West 2004). Section 2 of the Health and Safety Act states, in part:

"This Act shall apply to all employers engaged in any occupation, business or enterprise

in this State, and their employees, including the State of Illinois and its employees and all

political subdivisions and its employees ***."  820 ILCS 225/2 (West 2004). Section 3 of the Health and Safety Act states, in part:

"(a) It shall be the duty of every employer under this Act to provide reasonable

protection to the lives, health and safety and to furnish to each of his employees

employment and a place of employment which are free from recognized hazards that

are causing or are likely to cause death or serious physical harm to his

employees.                    (b) It shall be the duty of each employer under this Act to

comply with occupational health and safety standards promulgated

under this Act."  820 ILCS 225/3 (West 2004).

In order to determine if defendants' duty under this statute is an independent duty, we must first determine what duty, if any, the statute imposes on defendants.  Plaintiffs' argument throughout the case was that defendants were kitchen supervisors and that all kitchen supervisors have an independent duty to maintain a safe work environment. Plaintiffs contend that sections 2 and 3 of the Health and Safety Act impose this duty upon defendants.  **Plaintiffs do not discuss what duty section 2 imposes on defendants.  Section**

2 does not appear to address any duties but, rather, states that parts of the Health and Safety Act will apply to employers and employees. 820 ILCS 225/2 (West 2004). Plaintiffs do not specify which part of section 3 imposes a duty on defendants. However, sections 3(a) and 3(b) are the only parts of section 3 that refer to a general duty to provide a safe workplace to employees. 820 ILCS 225/3(a), (b) (West 2004). Sections 3(a) and 3(b) impose a duty on employers. 820 ILCS 225/3(a), (b) (West 2004). Neither section 2 nor section 3 mentions the duties of kitchen supervisors to kitchen workers. 820 ILCS 225/2, 3 (West 2004).

The Health and Safety Act does not give a definition for the term "employer" as used in the statute, nor do we find any case that has confronted the definition of "employer" as used in that statute. Although different statutes pertaining to employment define "employer" in different ways (820 ILCS 5/1.3 (West Supp. 2005) ("[A]ny individual, partnership, association, corporation, business trust, governmental or quasi-governmental body, or any person or group of persons that employs any person to work, labor, or exercise skill in connection with the operation of any business, industry, vocation, or operation"); 820 ILCS 215/2.2 (West 2004) ("[A]ny person, partnership, corporation, association or other entity who or which furnishes a minor articles for sale or distribution or materials for shining shoes, but not a charitable or other not-for-profit organization or a parent or guardian whose child or ward is the only minor employed); 820 ILCS 405/205 (West 2004) ("[A]ny employing unit which has or had in employment eight or more individuals on some portion of a day ***")), none of these definitions reflect a comprehensive definition of the term "employer," unaffected by the content of the specific

statute.  Black's Law Dictionary defines employer as "[a] person who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages."  Black's Law Dictionary 544 (7th ed. 1999).

Courts have distinguished the duties and liabilities of employers from supervisors in numerous circumstances.  Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill. 2d 12, 21 (1998); Northrop v. Lopatka, 242 Ill. App. 3d 1, 5 (1993); Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995).  In suits for retaliatory discharge, our supreme court has said, only an employer may be sued, and therefore, a supervisor cannot be found individually liable for firing an employee.  Buckner, 182 Ill. 2d at 21.  The Seventh Circuit Court of Appeals has held that under provisions of the federal Civil Rights Act of 1964 (42 U.S.C. §2000(e) (2000)) directed at employers, supervisors do not fall in the definition of employers and cannot be sued individually (Williams, 72 F.3d at 555), and that supervisors cannot be held criminally liable under the Occupational Health and Safety Act of 1970 (29 U.S.C. §666 (2000)), which applies only to employers (United States  v. Doig, 950 F.2d 411, 412-13 (7th Cir. 1991)).  In the same way, neither is a supervisor an employer for the purposes of vicarious liability for an employee's actions.  Northrop, 242 Ill. App. 3d at 5 (holding that although an employer could be liable for the actions of a dental assistant through the doctrine of agency, her supervisor, the dentist, was not accountable, because, as her supervisor, he was a coworker and not an employer).  Additionally, plaintiffs do not allege that defendants were plaintiffs' employers or had  a duty to plaintiffs as their employers.  Neither do the facts pled lead to the reasonable conclusion that plaintiffs were employees of defendants.

Certainly, some kitchen supervisors may be employers, but not all kitchen supervisors are employers. Section 3 of the Health and Safety Act does not create an independent duty of kitchen supervisors, who are not employers, to maintain a workplace free from hazards. Plaintiffs allege facts that show only that defendants were kitchen supervisors and not employers. The facts alleged do not show that defendants had a contract of hire with plaintiffs or that defendants individually paid plaintiffs' wages. Consequently, if defendants had a duty to protect plaintiffs from injury, related to sections 2 and 3 of the Health and Safety Act, this duty arose solely because defendants were agents of plaintiffs' employer, to which the Health and Safety Act applies. Thus, any duty defendants had to plaintiffs derives solely from their employment, not from the Act itself. See Healy,133 Ill. 2d at 312.

Instead of articulating how sections 2 and 3 of the Health and Safety Act impose a duty on defendants that is independent of their employment, plaintiffs argue that defendants' duty as kitchen supervisors is an independent duty because all kitchen supervisors have a duty to maintain a safe kitchen. Plaintiffs argue that because many employers, both public and private, require their kitchen supervisors to maintain a safe kitchen environment for kitchen workers, this duty is not unique to state employment. However, plaintiffs' argument is undercut by our supreme court's decision in Healy, 133 Ill. 2d at 312. In Healy, the plaintiff was a gymnast at Northern Illinois University (NIU) who sued gymnastics program staff, who were employed by NIU, for injuries that occurred while participating in gymnastics activities at NIU. Healy,133 Ill. 2d at 298-99. The defendants asserted that the Court of Claims had exclusive jurisdiction over the plaintiff's claims.

Healy, 133 Ill. 2d at 297. The plaintiff argued that because the defendants' duty of care was no greater than, and no different from, the duty that would be owed to participants in a privately run gymnastics program, the defendants' duty was analogous to a doctor's independent duty to care for a patient. Healy, 133 Ill. 2d at 312. Our supreme court rejected the plaintiff's argument. The court distinguished between the independent duty owed by a doctor to his patient, based on the doctor-patient relationship, and the duty owed to the student by the gymnastics department employees, which derived from their employment. Healy, 133 Ill. 2d at 312. **The court held that sovereign immunity applied to the gymnastics employees because the relationship between the plaintiff and the defendants would not have had a source outside the employment status of the defendants. Healy, 133 Ill. 2d at 312.**

Plaintiffs argue that Healy is no longer good law because it predated the source of duty test outlined in Currie (Currie, 148 Ill. 2d at 159) and because the Jinkins **court rejected the argument that sovereign immunity applies merely because the defendants would not have encountered the plaintiff "but for" their employment with the State (Jinkins, 209 Ill. 2d at 333). However, the Currie court stated that its decision was entirely consistent with Healy, and it pointed out that the Healy court also examined the source of the defendants' duty and determined that the duty breached by the gymnastics coaches derived solely from their state employment. Currie, 148 Ill. 2d at 165-66. Moreover, in Jinkins, our supreme court also found that Healy was not inconsistent with cases finding that doctors had an independent duty to their patients. Jinkins, 209 Ill. 2d at 332-33.**

In Jinkins, our supreme court clarified the distinction between an independent duty and a derivative duty that it identified in Healy. Jinkins, 209 Ill. 2d at 333. In its analysis, the Jinkins court acknowledged that an independent duty may be present even where the contact between the parties would not exist except for the defendant's employment. Jinkins, 209 Ill. 2d at 333. Instead, the Jinkins court clarified that it is not the derivation of the contact between the parties that is paramount, but rather the derivation of the duty the defendant has to the plaintiff. See Jinkins, 209 Ill. 2d at 333-34. Certain duties extend above and beyond the employment of the defendant, and although the defendant's employment may be the setting in which the duty must be carried out, the duty itself may derive from an outside source, such as professional standards or safe-driving requirements. See Jinkins, 209 Ill. 2d at 334; Currie, 148 Ill. 2d at 160. Additionally, employment duties can overlap with both professional and statutory duties. However, the test of a duty subject to sovereign immunity is whether the duty derives solely from state employment. Currie, 148 Ill. 2d at 159. Therefore, if the duty derives from a source other than or in addition to employment, it is an independent duty even it arose in the context of the party's employment. See Jinkins, 209 Ill. 2d at 333-34.

Plaintiffs insist that defendants' duty to plaintiffs was an independent duty because private kitchen supervisors have a duty to private kitchen workers similar to defendants duty to plaintiffs. We disagree. We believe that plaintiffs' confusion lies in the parties' interpretation of the Currie court's statement that "[w]here the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him solely by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit

court." (Emphasis in original.) Currie, 148 Ill. 2d at 159. Plaintiffs interpret this statement to mean that, in order for sovereign immunity to apply, a state employee must have breached a duty that arises only in state employment and does not exist for employees in the private sector. However, this is inconsistent with the premise of sovereign immunity. See Fritz, 209 Ill. 2d at 315 ("sovereign immunity is designed to protect the state's autonomy of action and to preserve state funds"). The State provides many services similar to those provided in the private sector, and therefore both private and public employees engaged in the same work acquire identical duties associated with their positions. Despite these often identical duties, the State Lawsuit Immunity Act and the Court of Claims Act still require that all actions against the State be heard in the Court of Claims, not just those involving actions only the State performs. See 745 ILCS 5/1 (West 2004); 705 ILCS 505/8(d) (West 2004). Consequently, even when a state employee's position requires the same duty required of a private employee, the state employee's breach of such a duty is protected by sovereign immunity if the duty derives solely from the employment position, and not from professional standards or statutory requirements that apply to all citizens. Healy, 133 Ill. 2d at 312. In other words, the source of duty test favors sovereign immunity when a state employee is sued for a breach of a duty imposed on him solely by his employment. See Kawaguchi, 361 Ill. App. 3d at 243. Therefore, it is not whether an employee performs uniquely state functions, like regulating prison inmates, but whether the state **employee's duty to a plaintiff** arises solely from his

employment, that determines whether the duty derives solely from his state employment. Healy, 133 Ill. 2d at 312; see also Swanigan v. Smith, 294 Ill. App. 3d 263, 271 (1998).[2]

In this case, the facts alleged in plaintiffs' proposed amended complaint do not show that defendants breached an independent duty to plaintiffs, but only a duty that arose as a result of their employment in the kitchen at Dixon. Defendants' employer is the Department of Corrections, which is an arm of the State of Illinois. See **Foley, 199 Ill. App. 3d at 14.** Therefore, their duty derives solely from their State employment. Like the employees of NIU, if it were not for defendants' status as kitchen supervisors at Dixon, defendants would have had no duty to protect plaintiffs from harm. See Healy,133 Ill. 2d at 312.

---

[2]As discussed earlier, the issue of whether a defendant is performing a uniquely governmental function becomes relevant once the court determines that the duty at issue does not arise solely as a result of one's state employment. Currie, 148 Ill. 2d at 160. In some circumstances, a state employee's performance of an independent duty may be unique to a government function such that an exception to the source of duty test is made. Currie, 148 Ill. 2d at 160; **Kawaguchi,** 361 Ill. App. 3d at 243-44. Thus, even when a state employee breaches a duty that does not derive solely from his employment, he may be protected by sovereign immunity if the breach occurs while he is performing a uniquely governmental function. Currie, 148 Ill. 2d at 160; see also Jinkins, 209 Ill. 2d at 335; **Kawaguchi,** 361 Ill. App. 3d at 243-44. Because we conclude that defendants' alleged duty to plaintiffs arose solely as a result of their employment, we do not have to consider if defendants were performing uniquely governmental functions.

Because defendants did not have a duty to plaintiffs independent of their state employment, plaintiffs' proposed amended complaint presented a claim only nominally against defendants and truly against the State, and it would be barred by principles of sovereign immunity. As a result, we conclude that if the trial court made an error in refusing to rule on plaintiffs' motion to amend their complaint prior to dismissing the case for lack of subject matter jurisdiction, such error was harmless. See City of Elgin, 169 Ill. 2d at 72; Firestone, 119 Ill. App. 3d at 690.

CONCLUSION

After reviewing all of plaintiffs' arguments on appeal, we hold that the trial court did not err when it dismissed plaintiffs' claims for lack of subject matter jurisdiction **and that any error that may have existed in the trial court's decision not to address plaintiffs' motion to amend was harmless**. Accordingly, we affirm the decision of the trial court.

Affirmed.

BOWMAN, J., concurs.

JUSTICE McLAREN, specially concurring:

I believe that this majority has now rendered two decisions that incorrectly analyze the merits of the sundry counts contained in the complaints. I specially concur here because I believe that, in spite of its incorrect analysis, the majority reaches the correct result in this case.

In Felzak v. Hruby, No. 2--05--0848 (September 5, 2006), I dissented in part because the majority found subject matter jurisdiction extant. The majority determined that

an unconstitutional statutory claim with a distinctive statutory theory of relief did not confer subject matter jurisdiction. However, the majority then reviewed the facts alleged in the statutory claim and determined that those facts alleged a justiciable common law claim. The majority did so by reinterpreting the facts and determining that there existed an alternative theory of relief, with different elements, relating to grandparent visitation. See Felzak, slip op. at 14-23. I noted that the majority allowed the plaintiff to assert that subject matter jurisdiction existed merely on the basis that a claim existed at common law, without requiring the plaintiff to file a separate count alleging such a claim. I pointed out that assuming, arguendo, such a claim existed at common law, it still should be pled as a separate count, as required by section 2--613(a) of the Code of Civil Procedure (735 ILCS 5/2--613(a) (West 2004)). By ferreting through the counts of the complaint in the case before us in an effort to find alternative theories of relief, the majority again subverts the rule of procedure that requires parties to plead "as many causes of action *** as they may have, and each shall be separately designated and numbered." 735 ILCS 5/2--613(a) (West 2004). Analogically, the majority has determined that the apple is an apple, but it did so by three separate reviews of the same apple, when only one review was appropriate and necessary. See Felzak, slip op. at 37 (McLaren, J., dissenting in part and specially concurring in part).

I wish to emphasize that I did not and do not declare that the claim must properly state a cause of action that would withstand a motion to dismiss; however, the claim must actually allege a common-law action.

"Thus, in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter. See People ex rel. Scott v. Janson, 57 Ill. 2d 451, 459 (1974) (if a complaint states a case belonging to a general class over which the authority of the court extends, subject matter jurisdiction attaches)." Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 334 (2002).

See also Felzak, slip op. at 38 (McLaren, J., dissenting in part and specially concurring in part). The court in Belleville reviewed the complaint and did not parse words or find a claim at common law integrated into a void statutory claim or in a count subject to jurisdiction in the Court of Claims.

I submit that the two-step analysis utilized by the majority in Felzak and this case is incorrect. The majority here erroneously continues to review a count to determine if there is an integrated second or third underlying cause of action contained within it. The majority determines that no count contains any facts that allege a duty outside the supervisors' employment. The majority also reviews the counts to determine if an independent duty exists that is common to all kitchen supervisors.[3] See slip op. at 21. Again, the majority fails to comprehend that, if there is no count alleging such an

_____

[3] I submit that a policy was violated when the grease was ordered to be moved prior to cooling. I see little difference between the violation of this policy and the violation of the policy relating to responding to a call that was not within the trooper's jurisdiction in Currie v. Lao, 148 Ill. 2d 151 (1992). Also, though not pled, it would seem that the facts may allege wilful and wanton behavior on the part of the supervisors. But I digress.

alternative theory of relief, the court should not further consider what the existing counts <u>might</u> contain, other than the stated theory of relief, in order to determine if subject matter jurisdiction exists.

The simple fact is that separate theories of relief must be pled in separate counts. The failure of the plaintiffs to comply with this simple fact absolves the majority of its erroneously held belief that it must search amongst the words of the sundry counts for additional interpolations addressing whether or not there is a justiciable matter. The majority in this case has again failed to properly follow the admonitions set forth in my partial dissent in <u>Felzak</u> and has ventured into the land beyond the looking glass. Neither the parties nor the courts should be placed in the position of trying to decipher a count to determine if there is more than one theory of relief in the count and, if so, how many. The majority has again followed the wrong analysis that it created and utilized in <u>Felzak</u> but, despite this failure, has come to the correct conclusion. That is why I specially concur.